UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 23-CV-81264-RAR

**BERNARD FERGUSON**,

    Plaintiff,

v.

**PALM BEACH COUNTY SHERIFF'S
DEPARTMENT OF CORRECTIONS**, *et al.*,

    Defendants.
_____/

## ORDER SCREENING SECOND AMENDED COMPLAINT

**THIS CAUSE** comes before the Court on Plaintiff's *pro se* Second Amended Complaint ("Second Am. Compl."). [ECF No. 53]. The Second Amended Complaint was timely filed before the Court's February 8, 2024 deadline for amended pleadings, *see* Scheduling Order, [ECF No. 36] at 2, and Plaintiff was not required to seek leave of Court to amend since it was filed less than 21 days after Defendant Ronald Waits was served on January 16, 2024, *see* FED. R. CIV. P. 15(a)(1)(A).

The Second Amended Complaint retains the same five deliberate indifference counts against Defendants Waits, Fairclough, Bradshaw, Palm Beach County Sheriff's Office ("PBSO"), and Mohammed that were raised in the Amended Complaint, so the Court will not address those further. *Compare* Second Am. Compl. at 14–15, *with* Am. Compl., [ECF No. 30], at 10–11. However, Plaintiff now seeks to add four more counts and two more defendants. *See* Second Am. Compl. at 15–17. Since Plaintiff is a prisoner, the Court must first review these new claims and dismiss them if they are "frivolous, malicious, or fail[ ] to state a claim upon which relief may be granted[.]" 28 U.S.C. § 1915A(b)(1). After careful review, the Court will **ALLOW** Count 6 of the Second Amended Complaint to proceed but will **DISMISS** the remaining counts.

## **LEGAL STANDARD**

The Court "*shall* review . . . a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity." 28 U.S.C. § 1915A (emphasis added). The definition of a "prisoner" includes "any person incarcerated or detained in any facility who is . . . accused of [or] convicted of . . . violations of criminal law." *Id.* § 1915A(c). In conducting its screening of a prisoner's complaint, the Court must "dismiss the complaint[] or any portion of the complaint," when it is (1) "frivolous, malicious, or fails to state a claim upon which relief may be granted[;]" or (2) "seeks monetary relief from a defendant who is immune from such relief." *Id.* § 1915A(b). Similarly, if a plaintiff wishes to proceed *in forma pauperis* rather than prepaying the filing fee, § 1915(e)(2) requires the court to "dismiss [a] case *at any time* if the court determines that . . . the action" fails for the same enumerated reasons articulated under § 1915A. *Id.* § 1915(e)(2)(B) (emphasis added).

To state a claim upon which relief may be granted, a complaint's factual allegations "must be enough to raise a right to relief above the speculative level"—with "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007). Under this standard, legal conclusions "are not entitled to the assumption of truth" and are insufficient to state a claim. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). Moreover, "[w]here a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* at 678 (internal quotation marks omitted).

## **ANALYSIS**

Plaintiff raises four new counts in his Second Amended Complaint. Counts 6 and 7 allege that the PBSO and Wellpath, LLC—the entity that provides medical services to the Palm Beach County Jail—violated Title II of the Americans with Disabilities Act ("ADA") by refusing to

provide Plaintiff with Suboxone to treat Plaintiff's opioid-use disorder ("OUD").  *See* Second Am. Compl. at 15–16.  In Count 8, Plaintiff accuses a new defendant, Sergeant Williams, of denying him access to the courts and retaliating against him when she refused to notarize "my Amended Complaint(s) and other briefs" which "effectively prevented me from using these briefs as rebuttal evidence to the Defendants' Responses in this case." *Id.* at 16–17.  Finally, in Count 9, Plaintiff claims that Sheriff Bradshaw failed "to properly train his staff" by allowing them to "retaliate and harass me because of my exercise of right of access to the courts." *Id.* at 17.  The Court will address each of these new counts in turn.

### A.  Counts 6 and 7 – Title II of the ADA

The ADA was enacted "to provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities." *Bircoll v. Miami-Dade Cnty.*, 480 F.3d 1072, 1081 (11th Cir. 2007) (quoting 42 U.S.C. § 12101(b)(1)).  Title II of the Act prohibits a "public entity from discriminating against a qualified individual with a disability on account of the individual's disability[.]" *Id.*  To state a Title II claim, "a plaintiff generally must prove (1) that he is a qualified individual with a disability; (2) that he was either excluded from participation in or denied the benefits of a public entity's services, programs, or activities, or was otherwise discriminated against by the public entity; and (3) that the exclusion, denial of benefit, or discrimination was by reason of the plaintiff's disability." *Id.* at 1083 (citing *Shotz v. Cates*, 256 F.3d 1077, 1079 (11th Cir. 2001)).  To receive damages for a Title II violation, Plaintiff "must prove that the entity he has sued engaged in intentional discrimination, which requires a showing of deliberate indifference." *Silberman v. Miami Dade Transit*, 927 F.3d 1123, 1134 (11th Cir. 2019).[1]

---

[1] Although the Eleventh Amendment usually prohibits a plaintiff from seeking monetary damages against the State, Title II "validly abrogates state sovereign immunity" in certain circumstances.  *United States v.*

The Court finds that Plaintiff has stated a Title II claim against PBSO. Plaintiff meets the first two elements relatively easily. Plaintiff alleges that he has a disability (OUD). *See* Second Am. Compl. at 16; *see also Johnson v. Dixon*, No. 23-CV-23021, 2023 WL 6481252, at *3 (S.D. Fla. Oct. 5, 2023) ("OUD, like other drug additions, can qualify as a disability under the ADA." (citing *Jeffery O. v. City of Boca Raton*, 511 F. Supp. 2d 1328, 1335 (S.D. Fla. 2007))). And Plaintiff also alleges that he has been denied a benefit provided to other prisoners at the Palm Beach County Jail: the M.A.P.S. program and the Suboxone it provides to inmates to help treat drug addiction. *See* Second Am Compl. ¶¶ 29–30.

The only question that remains is whether Plaintiff was denied access to the M.A.P.S. program and Suboxone because of his OUD. This is a particularly tough question to answer since the M.A.P.S. program is designed <u>for</u> prisoners like Plaintiff who suffer from OUD. *See id.* ¶ 8. Plaintiff was removed from the program for "misuse of authorized medication." *Id.* ¶¶ 17–19. Plaintiff admits that he acquired contraband Suboxone but insists that he did so to continue the Suboxone treatment he had been receiving before his arrest and to avoid the "severe withdrawal symptoms" associated with OUD. *Id.* ¶¶ 6–7. In other words, PBSO kicked Plaintiff out of the M.A.P.S. program because of the "unconventional" way Plaintiff was treating his own disability. At this preliminary stage of the proceedings, the Court finds these facts are sufficient to state a Title II ADA claim. To be clear, PBSO has the right to maintain institutional control of its jails by enforcing polices which "detect and deter the possession of contraband." *Florence v. Bd. of Chosen Freeholders of Cnty. of Burlington*, 566 U.S. 318, 328 (2012). But, for now at least, the

---

*Georgia*, 546 U.S. 151, 159 (2006). Damages appear to be available against PBSO in this case because Plaintiff alleges that PBSO violated Title II <u>and</u> the Fourteenth Amendment through their deliberate indifference to Plaintiff's serious medical needs. *See Nat'l Ass'n of the Deaf v. Florida*, 980 F.3d 763, 771 n.2 (11th Cir. 2020) ("The Supreme Court also upheld congressional abrogation of Eleventh Amendment immunity in Title II cases when a citizen alleges state action that actually and independently violates the Fourteenth Amendment." (citing *Georgia*, 546 U.S. at 157–59)). The Court will leave for another day, however, whether PBSO can rely on an Eleventh Amendment sovereign immunity defense here.

Court accepts Plaintiff's allegations that PBSO's decision to remove Plaintiff from the M.A.P.S. program did not have a legitimate penological purpose and was instead based on discriminatory animus. For these reasons, the Court will allow Count 6 to **PROCEED**.

The Court comes out the other way, however, on Count 7. Plaintiff insists that Wellpath also violated Title II of the ADA when it "failed to properly train its staff" to treat OUD-sufferers like Plaintiff with Suboxone <u>even when jail officials order Suboxone treatment to stop</u>. Second Am. Compl. at 16. Plaintiff alleges, rather incredibly, that Wellpath should have trained its staff to "overrule" jail officials who discontinue Suboxone treatment because "medical trumps everything." *Id.* As the Court previously explained when it dismissed Wellpath as a defendant in Plaintiff's original Complaint, "it is simply not conceivable for a private corporation that provides medical services [to a jail] to be responsible for a policy that is designed to discipline prisoners for violating the jail's rules." Order Dismissing Complaint in Part, [ECF No. 4], at 10. Medical staff employed at a jail are beholden to that jail's rules and procedures, and the Court will not find that the ADA demands Wellpath train its employees to be insubordinate to jail officials who require strict compliance with their rules for the safety of inmates, staff, and the general public. *See Taylor v. Adams*, 221 F.3d 1254, 1259–60 (11th Cir. 2000) (holding that a nurse did not violate an inmate's constitutional rights by complying with a jail's written policies even if the policy "was medically unreasonable"). The Court also notes that it is allowing Plaintiff's ADA claim to proceed against the entity (PBSO) that is responsible for the allegedly discriminatory policy, so seeking relief from Wellpath would be redundant. Count 7 is thus **DISMISSED**.

### B. Count 8 – Access to the Courts/Retaliation

In Count 8, Plaintiff accuses a new Defendant, Sergeant Williams, of "refusing to notarize my complaints," which has "frustrated my efforts to pursue nonfrivolous claims and has created a hostile environment which has impeded my ability to exercise my Constitutional rights." Second

Am. Compl. at 17.  Plaintiff avers that Sergeant Williams's actions are part of a larger pattern of him being denied access to the courts by various jail officials as retaliation for filing this action and multiple grievances within the jail.  *See id.* ¶¶ 38–39.

The First Amendment "grants prisoners a limited right of access to the courts.  The state may not burden this right with practices that are not reasonably related to legitimate penological objectives, nor act with the intent of chilling that First Amendment right."  *Harris v. Ostrout*, 65 F.3d 912, 916 (11th Cir. 1995) (internal citations omitted).  "However, in order to assert a claim arising from the denial of meaningful access to the courts, an inmate must first establish an actual injury."  *Barbour v. Haley*, 471 F.3d 1222, 1225 (11th Cir. 2006) (citing *Lewis v. Casey*, 518 U.S. 343, 349–50 (1996)).  An actual injury is established "by demonstrating that an inmate's efforts to pursue a nonfrivolous claim were frustrated or impeded by a deficiency in the prison library or in a legal assistance program or by an official's action."  *Id.*  A retaliation claim, on the other hand, is distinct from an access to the courts claim—even if the result of the retaliation is a denial of access to the courts.  *See Wright v. Newsome*, 795 F.2d 964, 968 (11th Cir. 1986).  To prevail on his retaliation claim, Plaintiff must prove that "(1) his speech or act was constitutionally protected; (2) the defendant's retaliatory conduct adversely affected the protected speech; and (3) there is a causal connection between the retaliatory actions and the adverse effect on speech."  *Moton v. Cowart*, 631 F.3d 1337, 1341 (11th Cir. 2011) (cleaned up).

Plaintiff has failed to state an access to the courts claim and a retaliation claim against Sergeant Williams for the same reason: her refusal to notarize Plaintiff's legal documents had no effect on his ability to access the courts.  Although Plaintiff claims that Sergeant Williams "frustrated my efforts to pursue nonfrivolous claims," Plaintiff has never been required to notarize a document to file any pleading in state or federal court.  Pleadings in federal court generally "need not be verified or accompanied by an affidavit," FED. R. CIV. P. 11(a), but, even if they did,

"[f]ederal law . . . provide[s] an alternative to making a sworn statement, but requires the statement to include a handwritten averment, signed and dated, that the statement is true under penalties of perjury." *West v. Higgins*, 346 F. App'x 423, 426 (11th Cir. 2009) (citing 28 U.S.C. § 1746); *see also* Fla. Stat. §§ 92.525(1)(c), (2) (allowing for a person to execute a "written declaration" without a notary). Contrary to Plaintiff's assertions, the Constitution does not require prison officials to notarize legal documents on demand. *See Pyles v. Carlson*, 698 F.2d 1131, 1132–33 (11th Cir. 1983) (holding that the "refusal of a secretary to notarize a legal document" did not state a "cognizable ground for relief"); *Nelson v. Orange Cnty. Jail Notary Dep't*, No. 08-CV-2083, 2009 WL 464950, at *2 (M.D. Fla. Feb. 24, 2009) (same). Moreover, even if Sergeant Williams refused to notarize Plaintiff's legal documents for an illegitimate reason, that refusal could not have "adversely affected" Plaintiff's ability to seek legal redress since he was never required to submit a pleading that was notarized. *Moton*, 631 F.3d at 1341; *see also Martin v. Davies*, 917 F.2d 336, 341 (7th Cir. 1990) (affirming dismissal of retaliation claim where plaintiff "was not required to have his other legal papers notarized under 28 U.S.C. § 1746 and [Illinois law]").

Plaintiff's ability to raise legal claims was not impacted by Sergeant Williams's refusal to notarize his legal documents so he has failed to state an access to the courts or retaliation claim against her. Count 8 is thus **DISMISSED**.

### C. Count 9 – Failure to Train

Plaintiff's final new count is a failure-to-train claim against Sheriff Bradshaw. Plaintiff argues that Sheriff Bradshaw's decision not to train his staff resulted in PBSO officials harassing and retaliating against Plaintiff by "refus[ing] to make copies of my motions, [refusing] to notarize briefs, and [delaying the result of] documents whenever possible." Second Am. Compl. at 17. A "local government's decision not to train certain employees about their legal duty to avoid violating citizens' rights may rise to the level of an official government policy for purposes of §

1983." *Connick v. Thompson*, 563 U.S. 51, 61 (2011). Establishing liability under a failure-to-train theory is "most tenuous." *Id.* To do so, Plaintiff must show that Sheriff Bradshaw "inadequately trains or supervises [his] employees, [his] failure to train or supervise is a [policy], and that [his] policy causes [his] employees to violate a citizen's constitutional rights." *Gold v. City of Miami*, 151 F.3d 1346, 1350 (11th Cir. 1998) (citing *City of Canton v. Harris*, 489 U.S. 378, 389–91 (1989)). In the absence of a "written policy," Plaintiff will have to show that Sheriff Bradshaw's "failure to train evidenced a 'deliberate indifference'" to the rights of his inmates. *Id.* "A pattern of similar constitutional violations by untrained employees is ordinarily necessary to demonstrate deliberate indifference for purposes of failure to train." *Connick*, 563 U.S. at 62.

The Court finds that Plaintiff has not stated a failure-to-train claim against Sheriff Bradshaw for two reasons. *First*, Plaintiff has not shown that Sheriff Bradshaw's "failure to train" amounted to a policy. Plaintiff's failure-to-train claim is based on only two incidents: Sergeant Williams's failure to notarize his Complaint on October 2, 2023, and an "intentional" decision by Medical Director "D. Whitten" to delay the production of documents Plaintiff had requested twice—once before he filed his Complaint and again on October 28, 2023. *See* Second Am. Compl. ¶¶ 34–41. Two incidents by two different employees in a one-month period that was directed at only one inmate is a far cry from the "evidence of a history of widespread prior abuse" that would put Sheriff Bradshaw on notice that he needed to train his employees on not interfering with an inmate's access to the courts. *Gold*, 151 F.3d at 1351 (quoting *Wright v. Sheppard*, 919 F.2d 665, 674 (11th Cir. 1990)); *see also Craig v. Floyd Cnty., Ga.*, 643 F.3d 1306, 1311 (11th Cir. 2011) ("A single incident of a constitutional violation is insufficient to prove a policy or custom even when the incident involves several employees of the municipality."). Since there is no evidence of widespread constitutional violations with the jail, Sheriff Bradshaw's alleged "failure to train" could not have amounted to a policy.

*Second*, even if there was a policy of failing to train jail employees, Plaintiff has not shown that the policy violated his constitutional rights. As the Court explained above, a jail official's refusal to notarize a legal document does not interfere with an inmate's ability to access the courts. *See Pyles*, 698 F.2d at 1132–33. And even though Plaintiff insists that delays in returning his documents or making copies for him has prevented him "from filing timely motions," Plaintiff has never filed an untimely motion in this Court nor does anything on the docket reflect that he has been unable to press his legal claims against Defendants in a timely or efficient manner. *See generally* Docket. Plaintiff, in short, has failed to show that Sheriff Bradshaw's lack of training has "frustrat[ed] [his] litigation," so he cannot say that this alleged policy violated his constitutional rights. *Christopher v. Harbury*, 536 U.S. 403, 415 (2002). For all these reasons, Count 9 is **DISMISSED**.

## CONCLUSION

For the foregoing reasons, it is hereby **ORDERED AND ADJUDGED** as follows:

1. Plaintiff's Second Amended Complaint, [ECF No. 53], shall **PROCEED** on Counts 1, 2, 3, 4, 5, and 6.

2. Counts 7, 8, and 9 of the Second Amended Complaint are **DISMISSED** for failure to state a claim under 28 U.S.C. § 1915A.

3. Counsel for Defendant PBSO is **ORDERED** to file a Response to Plaintiff's Motion for Preliminary Injunction, [ECF No. 54], by **February 23, 2024**. Plaintiff, if he wishes, may file a Reply to Defendant's Response by **March 1, 2024**.

**DONE AND ORDERED** in Miami, Florida, this 9th day of February, 2024.

_____
**RODOLFO A. RUIZ II**
**UNITED STATES DISTRICT JUDGE**